**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**DE'ANDREW DIXON,**

                **Plaintiff,**

     v.                     **CASE NO.   08-3078-SAC**

**SAM CLINE,
et al.,**

                **Defendants.**

**O R D E R**

This complaint was filed pursuant to 42 U.S.C. § 1983 by an inmate of the Hutchinson Correctional Facility, Hutchinson, Kansas (HCF). The court ordered plaintiff to submit an initial partial filing fee, and he has complied. Accordingly, plaintiff's motion for leave to proceed in forma pauperis (Doc. 2) will be granted.[1]

Plaintiff names as defendants the Hutchinson Correctional Facility, and Sam Cline, Warden HCF. As Count I, plaintiff alleges that on June 26, 2007, he was given a disciplinary report because of the way he spelled some words and because he writes "gangsta rap" music as a hobby as well as for "a small independent" label "Dramatic Entertainment." He further alleges HCF said "it's gang related," and punished him with the loss of six months good time, a

---

[1] Pursuant to 28 U.S.C. § 1915(b)(1), plaintiff remains obligated to pay the remainder of the full district court filing fee herein of $350.00. Being granted leave to proceed in forma pauperis entitles him to pay the remainder over time through payments from his inmate trust fund account as authorized by 28 U.S.C. § 1915(b)(2). Pursuant to § 1915(b)(2), the Finance Office of the facility where plaintiff is confined is directed by copy of this Order to collect twenty percent (20%) of the prior month's income each time the amount in plaintiff's account exceeds ten dollars ($10.00) until the filing fee has been paid in full. Plaintiff is directed to cooperate fully with his custodian in authorizing disbursements to satisfy the filing fee, including but not limited to providing any written authorization required by the custodian or any future custodian to disburse funds from his account.

$20.00 fine, and "level three." He asserts his rights to freedom of speech and association have been violated because his music is "an artistic expression."

As count II, plaintiff complains that "the mailroom" censors most "King" and "XXL" magazines, saying they "show too much skin" and some of the material is pornographic. He alleges these publications are ordered mostly by blacks and are "all about (his) culture" and about music, but also show black women in "thong bikinis or boy shorts." He claims "the Whites and Mexicans" are allowed to receive magazines showing females in thong bikinis and boy shorts, and that blacks' magazines are being discriminated against. He asserts this amounts to "racial profiling and discrimination." He also asserts it is contrary to HCF's own policy.

Plaintiff additionally complains that he tried to order the book Willi Lynch Law, but the HCF mailroom refused to allow it, saying it was violent and might cause "racial damage." He alleges that "the Jews" watch movies showing them getting killed and in camps. He argues that blacks also "come from a violent past," and have thus already been damaged. He claims blacks are being discriminated against, oppressed, and not being allowed to learn about their history[2].

**RELIEF REQUESTED**

Plaintiff seeks restoration of his six months of good time credit, and the return of his $20 fine and level 3 classification.

---

[2] This particular allegation is frivolous, since Willi Lynch Law is obviously not the only book in which black history may be studied.

2

He also seeks $186,000.00 for emotional distress, pain and suffering[3], discrimination, being deprived of learning about his culture, and violation of his rights to freedom of speech and association.

**SCREENING**

Because Mr. Dixon is a prisoner, the court is required by statute to screen his complaint and to dismiss the complaint or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief.  28 U.S.C. § 1915A(a) and (b).  Having screened all materials filed, the court finds the complaint is subject to being dismissed for reasons that follow.

**REQUEST FOR RESTORATION OF GOOD TIME IS HABEAS CORPUS CLAIM**

At the outset, the court finds plaintiff's challenge to disciplinary action taken against him at the HCF with his request for restoration of good time credit is not properly raised in this civil rights complaint.  This claim is, in essence, a request for speedier release,[4] which must be litigated by petition for writ of habeas corpus.  In <u>Wolff v. McDonnell</u>, the U.S. Supreme Court ruled that prisoners could not use § 1983 to obtain restoration of good time credit because <u>Preiser</u> had held that "an injunction restoring

---

[3] Plaintiff's claims of "emotional distress, pain and suffering" do not entitle him to money damages since he alleges no physical injury.  <u>See</u> 42 U.S.C. § 1997e(e)("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.").

[4]    Plaintiff challenges the decision in his particular case, rather than the procedures for forfeiture of good time credit.

3

good time improperly taken is foreclosed." <u>Wolff v. McDonnell</u>, 418 U.S. 539, 554-55 (1974), *citing* <u>Preiser v. Rodriquez</u>, 411 U.S. 475, 499 FN14, 500 (1973); <u>Brown v. Smith</u>, 828 F.2d 1493, 1495 (10th Cir. 1987).  Moreover, before a habeas corpus claim may be raised in federal court, all remedies available in the courts of the state must have been properly and fully exhausted.  Plaintiff does not allege that he has filed any action in state court seeking review of the challenged disciplinary action and forfeiture of his good time credit.  Finally, a claim for money damages based on wrongful forfeiture of good time credit is premature unless and until the administrative action has been overturned through the appropriate administrative or judicial process.  See <u>Heck v. Humphrey</u>, 512 U.S. 477, 487 (10th Cir. 1994); <u>Edwards v. Balisok</u>, 520 U.S. 641, 648 (1997).  Mr. Dixon will be given time to show cause why his claims seeking restoration of good time credit should not be dismissed, without prejudice to his filing an appropriate habeas corpus action after state remedies have been exhausted.

**IMPROPER DEFENDANTS**

Plaintiff's other ground for relief, that publications were censored in violation of his federal constitutional rights, is also subject to being dismissed.  "To state a claim under section 1983, a plaintiff must allege the violation of a right secured by the Constitution or law of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988); <u>Northington v. Jackson</u>, 973 F.2d 1518, 1523 (10th Cir. 1992).  Plaintiff names the

4

Hutchinson Correctional Facility as a defendant; however, the HCF is a prison, not a "person" amenable to suit under Section 1983. Accordingly, this action must be dismissed as against the HCF.

The other named defendant is Warden Sam Cline. However, plaintiff does not allege that defendant Cline personally participated in the decision by "the mailroom" to disallow the specified magazines and book. A defendant cannot be held liable in a civil rights action based solely on his supervisory capacity. Trujillo v. Williams, 465 F.3d 1210 (10th Cir. 2006); Olson v. Stotts, 9 F.3d 1475, 1477 (10th Cir. 1993). Thus, unless plaintiff alleges facts showing that Warden Cline was actually involved in denial of the cited publications, this action must be dismissed against defendant Cline. Plaintiff will be given time to either allege facts showing the personal participation of defendant Cline or name other proper defendants, such as the person in the mailroom who actually disallowed the publications.

**FAILURE TO EXHAUST PRISON ADMINISTRATIVE REMEDIES**

Moreover, it appears from the complaint that plaintiff has not challenged the censorship decision as violative of his equal protection and First Amendment rights, at every level of the prison grievance process at the HCF. Plaintiff's answers on his form complaint indicate he has not exhausted because he felt it wasn't necessary after the unit team failed to respond[5], he had problems with a couple unrelated grievances, and he does not "trust HCF." It

---

[5] The failure of prison officials at one level to timely respond to an inmate grievance does not excuse the statutory exhaustion prerequisite. Instead, it entitles the inmate to proceed to the next level of the administrative process.

5

is clear from these allegations that Mr. Dixon has not fully exhausted prison administrative remedies on his claims. He will be given time to show either that he has fully exhausted or why this action should not be dismissed, without prejudice, for failure to exhaust.

**FAILURE TO STATE SUFFICIENT FACTS IN SUPPORT OF CLAIM**

Plaintiff's factual allegations in support of his claim of unconstitutional censorship, taken as true, are not sufficient to state a First Amendment violation. In the first place, Mr. Dixon's conclusory claim that the censorship decisions in his case were contrary to prison policy is without legal or factual merit[6]. The policy of the Kansas Department of Corrections has been to censor publications containing pictures of partially bare buttocks pursuant to K.A.R. 44-12-313, and this policy was challenged and upheld in Strope v. Collins, 2008 WL 2435560 (D.Kan. June 12, 2008). Just as in this case, the censorship at issue in Strope was "of entire publications because they contain what appears to be a few photographs of women's partially bare buttocks." Strope v. Collins, 492 F.Supp.2d 1289, 1296 (D.Kan. 2007).

Secondly, Judge Lungstrum determined in Strope, on cross motions for summary judgment after discovery was completed, that prison officials produced evidence showing this policy was "reasonably related" to a legitimate penological purpose. Prison

---

[6] Plaintiff's claim that HCF is "going against their own policies" is completely conclusory. His summary of "their IMPP" as prohibiting only the showing of "pubic hair, anal, or nipples" is obviously oversimplified and inaccurate, in light of the content of K.A.R. 44-12-313. If plaintiff's magazines were censored under some other regulation, he must inform the court of that regulation.

6

officials are entitled to deference with regard to such matters. <u>Overton v. Bazzetta</u>, 539 U.S. 126, 132-33 (2003)("Substantial deference" must be accorded "to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them."). Judge Lungstrum considered the affidavit of Roger Werholtz, "who promulgated this regulation and currently serves as the Secretary of KDOC" and the affidavit of defendant Jim Collins at Lansing Correctional Facility who censored the incoming publications at issue. He then analyzed the restrictive policy on partially bare buttocks by applying the following standards:

> Inmates have a First Amendment right to receive information while in prison to the extent the right is not inconsistent with prisoner status or the legitimate penological objectives of the prison. <u>Jacklovich v. Simmons</u>, 392 F.3d 420, 426 (10th Cir. 2004). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987); accord <u>Jacklovich</u>, 392 F.3d at 426. In determining whether the regulation is reasonably related to legitimate penological interests, the court must engage in a four-factor analysis of "(1) whether a valid and rational connection exists between the regulation and the asserted legitimate governmental interest, (2) whether alternative means of exercising the constitutional right remain available to inmates, (3) any effect accommodating the right would have on guards and inmates, and (4) the absence of ready alternatives." <u>Jacklovich</u>, 392 F.3d at 426 (citing <u>Turner</u>, 482 U.S. at 89-90). The burden is on the plaintiff to disprove the validity of the prison regulation. <u>Overton v. Bazzetta</u>, 539 U.S. 126, 132 (2003); <u>Steffey v. Orman</u>, 461 F.3d 1218, 1222 (10th Cir. 2006).

Judge Lungstrum's findings in <u>Strope</u> are instructive and pertinent to plaintiff's claims herein:

> The first Turner factor is that "there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to

7

> justify it." <u>Turner</u>, 482 U.S. at 89; <u>accord</u> <u>Jones v. Salt Lake County</u>, 503 F.3d 1147, 1153 (10th Cir. 2007). Here, the affidavit of Mr. Werholtz justifies the ban on materials containing depictions of bare buttocks on the grounds of prison security.  He explains the ban in terms of the risks to homosexual inmates and the need to keep the regulation gender neutral, as well as in terms of managing paraphilias and sexual deviance associated with sex offender inmates.  Certainly, prison security and safety are legitimate governmental objectives. <u>Salt Lake County</u>, 503 F.3d at 1156.  Furthermore, a rational connection exists between the prison regulation's ban on bare buttocks and preventing the general type of disruptive behavior that those types of materials could encourage.  <u>Cf</u>. <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994) (reversing grant of summary judgment on issue of whether prison officials were deliberately indifferent to substantial risk of harm where transsexual who projected feminine characteristics was beaten and raped in the general inmate population); <u>Butler v. Dowd</u>, 979 F.2d 661 (8th Cir. 1992)(affirming jury verdict that prison officials violated prisoners' Eighth Amendment rights by permitting them to be homosexually raped by other inmates).

<u>Id</u>. at *4.  Judge Lungstrum found the second Turner factor was also satisfied because "the regulation at issue only prohibits certain specifically defined sexually explicit materials," while inmates still had access to a broad range of other publications through subscriptions and the prison library.  With regard to the third Turner factor, he found:

> According to Mr. Werholtz, if KDOC were to remove this prohibition, correctional staff would be significantly burdened in attempting to enforce the intent of the regulation, and in successfully managing sex offenders in the prison population who receive such literature by illicit dealing and trading with other non-sex offender inmates.  This establishes that to allow inmates to receive and possess images depicting bare buttocks would negatively impact the safety and security of prison personnel and other inmates. Thus, this Turner factor is also satisfied.

<u>Id</u>. at *5.  Judge Lungstrum finally found the fourth Turner factor was satisfied because plaintiffs had not provided facts indicating an "easy alternative exists that would fully accommodate their

rights at a de minimis cost to the defendants' legitimate interests in institutional security." Id. Judge Lungstrum also held that plaintiffs failed to present specific facts[7] demonstrating "the defendants have applied the challenged prison regulation in a manner that is not reasonably related to legitimate penological interests." Strope, 492 F.Supp.2d at 1295; Turner, 482 U.S. at 89-90.

Mr. Dixon acknowledges that the censored magazines in this case included pictures of females in thong bikinis or boy shorts, which were found to be objectionable by mailroom staff. Thus, this court presumes the publications in question were censored pursuant to K.A.R. 44-12-313. As noted, the application of this regulation to censor pictures of partially bare buttocks has been found to satisfy the first three Turner factors. Plaintiff alleged no facts indicating a different result should obtain in this case than in Strope.

Plaintiff's assertions of racial discrimination and violation of the Equal Protection Clause are similarly deficient, as they are supported only by his conclusory allegations[8]. Brown v. Zavaras, 63

---

[7] Mr. Dixon has alleged no facts indicating an "easy alternative" exists to accommodate his First Amendment rights "at a de minimis cost to the defendants' legitimate interests in institutional security."

[8] Plaintiff's argument that non-black inmates are allowed to receive publications similar to those denied to him suffers from the same deficiency as plaintiffs' argument in Strope that:

> there is no rational connection between banning a few pictures with partially bare buttocks when the same materials can be seen daily on numerous television shows. Plaintiffs, however, have not submitted any admissible evidence to support this conclusory argument. They rely on an interrogatory response from David McKune in which he lists the channels received by inmates on the prison's cable system. This mere list of channels does not establish the extent to which these channels' programs permit similar visual depictions or that inmates are actually permitted to view those programs. In short, plaintiffs have not established that inmates have open access to any similar visual depictions on television.

F.3d 967, 972 (10th Cir. 1995); See Fogle v. Pierson, 435 F.3d 1252, 1263 (10th Cir. 2006); see Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991)(vague and conclusory allegations need not be accepted by the court).  The Equal Protection Clause of the Fourteenth Amendment provides that no State may deny any person within its jurisdiction the equal protection of the laws.  To state an equal protection claim, plaintiff must allege that the government treated him differently than others who were similarly situated, see Cleburne v. Cleburne Living Ctr., 473 U.S. 432 (1985), and that defendants applying the disparate treatment did so with a discriminatory purpose or intent.  Mr. Dixon has alleged no facts indicating mailroom staff intentionally discriminated against him because of his race.  He also fails to name any white, Jewish, or Hispanic inmates and specify what publications they were allowed to receive that contained pictures of partially bare buttocks.  Plaintiff is provided the opportunity to submit additional factual allegations in support his denial of equal protection claim.  If he fails to cure the deficiencies in his complaint discussed herein in the time allotted by the court, this action may be dismissed without further notice.

**IT IS THEREFORE ORDERED** that plaintiff's Motion for Leave to Proceed in forma pauperis (Doc. 2) is granted.

**IT IF FURTHER ORDERED** that plaintiff is granted thirty (30) days in which to show cause why his claims regarding disciplinary action and seeking restoration of good time credit should not be dismissed for the reasons stated herein; and on his remaining claims, to name a proper defendant, allege additional facts

sufficient to support his constitutional claims, and show cause why they should not be dismissed for the reasons stated herein.

The clerk is directed to transmit a copy of this Order to plaintiff and to the financial officer at the institution where plaintiff is currently confined.

**IT IS SO ORDERED.**

Dated this 6th day of August, 2008, at Topeka, Kansas.

                                s/Sam A. Crow
                                U. S. Senior District Judge